VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-183



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2025

| | |
|---|---|
| In re A.G., Juvenile<br>(J.G., Mother\*) | } APPEALED FROM:<br>}<br>} Superior Court, Caledonia Unit,<br>} Family Division<br>} CASE NO. 23-JV-01052<br>Trial Judge: Howard A. Kalfus |

In the above-entitled cause, the Clerk will enter:

Mother appeals a family division order terminating her parental rights to her child A.G., born in October 2022.[1]  On appeal, mother argues that the court erred in terminating her rights even though she had made progress towards achieving the goals of the case plan and that she was not provided with reasonable supports.  We affirm.

The record reveals the following facts.  Mother has been diagnosed with schizophrenia.  In May 2023, A.G.'s maternal aunt and partner began caring for A.G. due to concerns about mother's ability to safely parent A.G. because mother was not taking her medication and was exhibiting manic behaviors.  In August 2023, the State filed a petition alleging that A.G. was a child in need of care or supervision (CHINS).  In November 2023, the court found that A.G. was CHINS due to lack of proper parental care.  The court found that there was a risk of harm given mother's escalated behavior and unwillingness to engage in safety planning.  In March 2024 the court adopted a disposition order with a goal of reunification with parents.  Mother's action steps included obtaining a mental-health assessment and following through on recommendations, signing releases allowing the Department for Children and Families (DCF) to verify progress, working with a psychiatrist, attending appointments, obtaining safe and adequate housing, maintaining stable income, and completing a parenting class.

DCF placed A.G. with her maternal aunt and her partner, who had already been looking after A.G.  A.G.'s foster parents met her medical, dental, emotional, developmental, and educational needs.

In September 2024, the State moved to terminate mother's parental rights.  Following a hearing in May 2025, the court found that there was a change of circumstances due to mother's

---

\* Father voluntarily relinquished his parental rights and is not involved in this appeal.

lack of progress. Mother initially had visits with A.G., but those stopped in November 2023. Mother had no contact with DCF or A.G. for thirteen or fourteen months until January 2025, when she obtained housing, began mental-health treatment, and resumed contact with A.G., meeting virtually once a week. Although the court acknowledged this recent progress, the court found that it was inadequate because it was already six months past the reunification date contemplated in the case plan. The court further found that termination of mother's rights was in A.G.'s best interests. Although mother was having weekly virtual visits with A.G., she missed a critical period of A.G.'s life. She had stopped visiting for over a year from the time A.G. was thirteen months old. A.G. had a loving relationship with her foster parents and extended family. A.G. was well-adjusted to her home, where she had spent the majority of her life. Mother was not able to resume parenting within a reasonable time as measured from the perspective of A.G., who was young and needed permanency. Although the court recognized that mother demonstrated love and affection for A.G., her long absence meant that she did not play a constructive role in A.G.'s life. Therefore, the court terminated mother's rights. Mother appeals.

When the State moves to terminate parental rights after the initial disposition, the court must first find that there is a change of circumstances, 33 V.S.A. § 5113(b), and second, "that termination of parental rights is in the child's best interests." In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.). In assessing the child's best interests, the court must consider the statutory factors. 33 V.S.A. § 5114(a). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re K.F., 2004 VT 40, ¶ 8.

On appeal, mother first argues that she had made sufficient progress on the case plan to show that she could parent within a reasonable time. Of the statutory best-interests factors, the most important is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). "The reasonableness of the time period is measured from the perspective of the child's needs, and may take account of the child's young age or special needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29 (citation omitted).

The court found that although mother had made some progress, it came after A.G. had already been in custody for some time. For over a year, when A.G. was very young, mother took no steps to engage with DCF or to visit A.G. This absence meant that it would take time for mother to establish a parental relationship with A.G. and to demonstrate the skills necessary to parent her. Moreover, although mother had found permanent housing for herself, mother had not shown that it would be appropriate for A.G. Given A.G.'s young age and need for permanency, the evidence supports the court's finding that despite mother's progress, she would not be able to resume parenting A.G. within a reasonable time, as measured from A.G.'s perspective.

Mother next argues that DCF failed to provide her with reasonable support and services so that she could complete the goals of the case plan. She contends that due to her mental disability she required parenting classes and services specific to her needs and DCF did not make reasonable modifications to its generic services. Mother failed to preserve this argument for appeal. See In re A.M., 2015 VT 109, ¶ 28, 200 Vt. 189 ("[T]o properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." (quotation omitted)). In the family division, mother did not assert that DCF should have provided different supports or accommodated her disability in some manner; therefore, we do not address this contention on appeal. See In re M.O., 2015 VT 120, ¶ 16, 200 Vt. 384 (declining to address argument that DCF failed to accommodate parent's disability where it was not raised in family court proceedings).

In any event, the record here supports the court's analysis of the best-interests factors and particularly that mother's lack of progress was due to factors within her control. For over a year, mother did not engage with DCF or service providers, did not visit A.G., and did not appear at court hearings. The DCF worker testified that the worker took steps to contact mother by telephone, by electronic means, through family members and service providers, and by driving around town to locate mother in person. As the court found, mother's lack of engagement and contact with A.G. hindered her ability to form a relationship with A.G. and make progress towards parenting.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice